IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**WILBERT MCKREITH,**

      **Plaintiff,**

**v.**                                     **Civil Action No. 1:19cv106**
                                                **(Judge Kleeh)**

**UNITED STATES OF AMERICA,**

      **Defendant.**

## REPORT AND RECOMMENDATION

### I. Introduction

On May 13, 2019, the *pro se* Plaintiff, an inmate then-incarcerated at USP Hazelton[1] in Bruceton Mills, West Virginia, initiated this case by filing a filed what was ostensibly a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Because it was not on a form approved by this district, the Clerk initially issued a Notice of Deficient Pleading and Intent to Dismiss ("Notice"). However, upon initial review, Plaintiff's filing was determined to be an attempt to raise both Bivens and Federal Tort Claim Act ("FTCA") claims. Accordingly, by Order entered June 12, 2019, the Plaintiff was directed to disregard the Notice; the Clerk was directed to strike the Notice, change the Nature of Suit and Cause of Action, issue a regular deficiency notice, and send Plaintiff packets to complete both Bivens and FTCA complaints. ECF No. 5. On July 22, 2019, Plaintiff filed the court-approved form FTCA complaint and paid the $350.00 filing fee. ECF Nos. 9, 10. Because Plaintiff had not filed the Bivens complaint, requested an extension of time, or offered any explanation for his failure to do so, on August 22, 2019, the Plaintiff was directed to show cause within 14 days why his case should not be dismissed for failure to prosecute. ECF No. 11. On September 3, 2019,

---

[1] Plaintiff is presently incarcerated at USP Atwater in Atwater, California.

Plaintiff wrote to the District Judge, indicating that he only wanted to raise FTCA claims and did not wish to pursue a <u>Bivens</u> action after all.[2] ECF No. 13. Along with the letter, Plaintiff filed an amended FTCA complaint [ECF No. 14]; however, the amended FTCA complaint was not on this district's approved form. Accordingly, by Order entered September 4, 2019, the "amended complaint" was construed as a motion to amend and granted. ECF No. 16. The Clerk was directed to send Plaintiff a Court-approve form FTCA complaint to complete. <u>Id.</u>  On September 16, 2019, Plaintiff filed the Amended Complaint. ECF No. 19.  By Order entered September 17, 2019, the Clerk was directed to change the Nature of Suit and Cause of Action to reflect that the instant action arose under the FTCA. ECF No. 19.

Because the plaintiff paid the $350 filing fee and was not granted leave to proceed *in forma pauperis*, on October 1, 2019, an Order was entered directing the Clerk to issue a 60-day summons for the named defendant; the plaintiff was advised that he must effect service of process upon the United States and timely provide the Court with certification of service by filing documents which reflected proper, completed service. ECF No. 21. On October 21, 2019, the plaintiff filed the proof of service [ECF No. 24, 25]; however, a review of the same revealed that Plaintiff had served the wrong version of the complaint.  On October 22, 2019, an Order was entered, directing the Clerk to reissue the summonses and directing Plaintiff to re-serve the Defendant with the correct version of the Amended Complaint. ECF No. 26. On November 4, 2019, the plaintiff filed the proof of service. ECF No. 29.

---

[2] Nonetheless, on February 24, 2020, Plaintiff filed a <u>Bivens</u> civil rights complaint, alleging the same facts of the June 16, 2016 incident at issue in the instant case. <u>See</u> <u>McKreith v. Pearce</u>, Case No. 1:20cv33.  A Report and Recommendation was entered on February 28, 2020, recommending that the case be dismissed as untimely filed and giving Plaintiff fourteen days to object. Plaintiff did not file objections ,and as of the date of entry of this Report and Recommendation, that case is still pending.

On January 30, 2020, the Defendant filed a motion to dismiss or in the alternative, motion for summary judgment with a memorandum in support, attaching copies of three sworn affidavits, an Incident Report, Bureau of Prisons ("BOP") documents, and excerpts from Plaintiff's medical records. ECF Nos. 34, 35. Because Plaintiff was proceeding *pro se*, on January 31, 2020, a Roseboro Notice was also issued. ECF No. 36. On February 18, 2020, Plaintiff filed a response in opposition titled Motion for Summary Judgment. ECF No. 39.  On March 3, 2020, the Defendant replied. ECF No. 40. On July 13, 2020, the Defendant was directed to produce a copy of any and all video footage of the incident at issue in the Amended Complaint. ECF No. 41.  On July 20, 2020, Defendant filed a copy of a DVD with some video of the June 16, 2016 incident. ECF No. 42.

This matter is before the undersigned for review, report and recommendation pursuant to LR PL P 2, *et seq*., and 28 U.S.C. § 636(b)(1)(B).

## II. Background

On February 28, 2003, the United States District Court for the Southern District of Florida sentenced Plaintiff to an aggregate term of 92 years and six (6) months in federal prison, followed by a 5 year term of supervised release, based on convictions for "Bank Robbery" (18 U.S.C. § 2113(a), "Felon in Possession of a Firearm" (18 U.S.C. § 922(g)(1)), and "Use of a Firearm During a Bank Robbery" (18 U.S.C. § 924(c)(1)(A)). See Declaration of Howard Williams ("Williams Decl."), ECF No. 35-1, ¶ 4 at 2 – 3; see also Sentry Public Inmate Data, ECF No. 35-1 at 6. Plaintiff was designated to the United States Penitentiary ("USP") Hazelton in Bruceton Mills, West Virginia, from January 22, 2014, until July 19, 2016. Williams Decl. at ECF No. 35-1, ¶ 5 at 3; see also SENTRY Inmate History, ECF No. 35-1 at 14 – 15. Plaintiff is scheduled to be released on May 16, 2082, via Good Conduct Time Release.[3]

---

[3] See Bureau of Prison's ("BOP") inmate locator, FEDERAL BUREAU OF PRISONS, FIND AN INMATE, https://www.bop.gov/inmateloc/ (last visited July 9, 2020).

### III. <u>The Pleadings</u>

#### A. <u>The Amended Complaint</u>

In the Amended Complaint, filed without a memorandum in support, Plaintiff alleges that on June 16, 2016, at USP Hazelton, in an unprovoked incident, after first calling him a "nigger," BOP staff in the Special Housing Unit ("SHU") wrongfully placed him in ambulatory restraints for four days, in violation of his due process rights. Plaintiff denies having previously violated any BOP rule or receiving an incident report for any infraction to justify the application of the restraints.  Further, he alleges that BOP staff gave false statements to protect other staff. ECF No. 18 at 6.

Plaintiff contends that while restrained for four days, he suffered sleeplessness, anxiety, and stress, and because he was unable to use the toilet with his hands tied to his waist, suffered pain and humiliation. <u>Id.</u> at 9.

For relief, the plaintiff seeks $5,000.00 in compensatory damages for the pain and suffering he experienced in the "tort against my body." <u>Id.</u>

Plaintiff attaches a copy of his February 20, 2017 Standard Form 95 Administrative Tort Claim [ECF No. 18-1 at 1]; a copy of his March 9, 2019 Administrative Tort Acknowledgment Letter [<u>id.</u> at 2]; a copy of his April 19, 2019 denial letter [<u>id.</u> at 3]; a copy of a 2-page excerpt from his Inmate Discipline Data Chronological Disciplinary Record; a copy of a September 6, 2016 FCC Hazelton Administrative Remedy Informal Resolution Response [ECF No. 18-3]; and a copy of a May 9, 2019 letter from BOP Regional Counsel denying Plaintiff's Freedom of Information Act ("FOIA") request for "'still photos' [sic] video of being placed in restraints.'" ECF No. 18-4.

#### B. <u>Defendant's Motion to Dismiss or in the Alternative, Motion for Summary Judgment</u>

Defendant argues that the case should be dismissed or summary judgment granted in its favor because

1) Plaintiff's claims of negligence arising out of the applications of restraints must be dismissed because there is no support for them in the record, given that the BOP's immediate use of force was necessary to gain control of Plaintiff based on Plaintiff's own actions;

2) Plaintiff's claim for damages for mental and emotional injuries, without a prior showing of physical injury, are not properly raised in a FTCA action and should be dismissed;

3) Plaintiff's claim of due process violation is a constitutional claim that is not properly brought in a FTCA action and should be dismissed; and

4) Plaintiff has no liberty interest in being free from the application of restraints.

ECF No. 35 at 6 – 9. Attached to Defendant's dispositive motion are several sworn affidavits, copies of BOP documents, restraint checklists, and excerpts from Plaintiff's medical records. See ECF No. 35-1 – 35-3.

## C. **Plaintiff's Response in Opposition, styled as Motion for Summary Judgment**

Plaintiff reiterates the facts alleged in his complaint regarding the BOP employees' actions toward him and attempts to refute the Defendant's version of the same. He denies that he was found in possession of destroyed government property, refused any orders, was "ever out of control toward staff," or that he was disruptive, insolent, or threatening; he insists that he was fully compliant at all times, and never received an Incident Report for violating any policy. ECF No. 39 at 2 - 4. Nonetheless, he claims that BOP staff "made false statements against" him which resulted in him being placed in restraints. Id. at 4. He insists that he was kept in restraints for four days "only for the enjoyment of USP Hazelton S.H.U. B.O.P. staff." Id. at 8. For the first time, he alleges that the Defendant committed an "intentional tort" against his body. Id. at 5 – 6. Further, without elaborating, he argues that he has established all the elements to prove negligence. Id. at 6.

Plaintiff attaches another copy of the September 6, 2016 FCC Hazelton Administrative Remedy Informal Resolution Response [ECF No. 39-1]; another copy of the same 2-page excerpt from his Inmate Discipline Data Chronological Disciplinary Record [ECF No. 39-2]; an excerpt about

"Prohibited Acts and Available Sanctions" from a BOP "Inmate Admission & Orientation Handbook [ECF No. 93-3];" and another copy of the May 9, 2019 letter from BOP Regional Counsel denying Plaintiff's FOIA request for "'still photos' [sic] video of being placed in restraints.'" ECF No. 39-4.

**D. <u>Defendant's Reply</u>**

Defendant reiterates its request that this case be dismissed or summary judgment granted in its favor, noting that Plaintiff's response merely repeats the factual representations and claims of his complaint, without adequately addressing the Defendant's arguments on the same. ECF No. 40 at 1 – 2.

## IV. <u>Standard of Review</u>

**A. <u>Motion to Dismiss, Fed.R.Civ.P.12(b)(1)</u>**

Under Federal Rule of Civil Procedure 12(b)(l), a party may file a motion to dismiss for lack of jurisdiction over the subject matter. A plaintiff bears "the burden of proving that subject matter jurisdiction exists." <u>Evans v. B.F. Perkins Co.</u>, 166 F.3d 642, 647 (4th Cir. 1999). In considering a motion to dismiss pursuant to Rule 12(b)(l), a court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." <u>Id.</u> (internal quotation marks omitted). A court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." <u>Id.</u> (internal quotation marks omitted). When a defendant asserts multiple defenses, "questions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'" <u>Owens-Illinois, Inc. v. Meade</u>, 186 F.3d 435, 442 n.4 (4th Cir. 1999).

**B. <u>Motion to Dismiss 12(b)(6)</u>**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 – 21 (1972) (*per curiam*); Erickson v. Pardus, 551 U.S. 89, 94 (2007). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Haines, *supra* at 520–21. "[T]he mandated liberal construction afforded to *pro se* pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999). However, "judges are [] not required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417 – 8 (7th Cir. 1993).

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that "because the plaintiffs [] have not nudged their claims across the line from conceivable to

7

plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

"Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alternative Energy. Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the

8

complaint. "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 2509 (2007).

## C. **Motion for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, *supra* at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific

facts showing that there is a genuine issue for trial." Id. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, *supra* at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, *supra* at 587. "Where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. *citing* First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289 (1968). See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, *supra* at 587-88; Anderson, *supra* at 248-49.

## V. Analysis

### A. Factual History

There appears to be no dispute that on the morning of June 16, 2016, Plaintiff was placed in a SHU holding cell during a cell search. Declaration of Stephanie Morris, Special Investigative Services ("SIS") Technician at USP Hazelton ("Morris Decl."), ECF No. 35-2, ¶ 7 at 7; ECF No. 39 at 1 - 2.

Thereafter, the parties' version of the events differs. Plaintiff's version of the event is that after the cell search, BOP Staff K. Pearce came to his SHU holding cell and said "cuff up nigger."

ECF No. 39 at 2. Plaintiff admits that he went to the back of the cell, instead of coming forward to be cuffed, and denies having "any conversation" with Pearce. Id. at 2. He contends that then, at around 8:15 a.m. [sic], Lt. Shearer ordered the use of force and application of restraints. ECF No. 39 at 2. Plaintiff denies that he threatened staff; refused their orders, or resisted in any way. Id.

Plaintiff insists that the Government's contention that he possessed destroyed government property is a "false statement," because he was never charged with the same. ECF No. 39 at 2 – 3.

Plaintiff contends that the application of restraints was completely unjustified, because prior to June 16, 2016, he was never charged with destroying government property; his disciplinary record supports this; and that he had "never received an Incident Report for violating any rules." ECF No. 18 at 6. He denies insolence toward or being verbally assaultive to BOP staff.  ECF No. 39 at 4.

Plaintiff contends that the video of the incident will prove that he did not resist staff or threaten them and that he was placed in restraints "without incident," but that the video is "being withheld in full" by the BOP. ECF No. 39 at 2.

Defendant's version of the event thereafter is contained in the Incident Report attached to their dispositive motion:

> On June 16, 2016, at approximately 11:15 a.m., inmate McKreith, Wilbert, Reg. No. 14398-050 was the subject of a Calculated Use of Force. Specifically, inmate McKreith was in the holding cell in the Special Housing Unit after a routine cell search revealed he was in possession of destroyed government property. Inmate McKreith then escalated the situation by refusing all staff orders and stated that he would harm any staff member that attempted to enter the holding cell to remove him. The Warden was briefed of the situation and authorized a Use of Force team to be assembled to remove inmate McKreith from the holding cell and place him in ambulatory restraints until he can display an extended period of calm behavior. Confrontational avoidance proved effective once the team was positioned on the door. Inmate McKreith was placed in hand restraints, searched, metal detected, placed in soft ambulatory restraints at approximately 11:30 a.m. and medically assessed. Inmate McKreith was noted to have sustained no injuries. Inmate McKreith was placed in cell MPR-3 without further incident.

ECF No. 35-2 at 8.

Plaintiff arrived in Health Services for a medical assessment at 11:39 a.m. He was seen by Brett Clark, RN. His only injury was a small 3cm abrasion to his left shoulder. He denied pain and had no other visible injuries. See BOP Health Services Clinical Encounter, ECF No. 35-3 at 6.

Plaintiff was kept in soft ambulatory restraints until June 19, 2016, because of his continued disruptive behavior. See Morris Decl., ECF No. 35-2, ¶ 7 at 3. During the every-two-hour restraint checks over the course of the next three days, he was verbally assaultive toward staff, banged on his door, and refused to be removed from the restraints. Id. He alternated between refusing to speak and being argumentative, yelling and cursing at staff, kicking his door, threatening staff with bodily harm, and demanding to speak with the FBI. See 24-Hour Restraint Checklists, id. at 11 – 20. Finally, at 8:30 a.m. on June 19, 2016, Plaintiff calmed sufficiently to agree to discontinue his disruptiveness and return to his cell. See Morris Decl., id., ¶ 8 at 3.

Plaintiff was evaluated again by Health Services in the SHU at 8:40 a.m. on June 19, 2016, after the restraints were removed; he denied any injury to any part of his body and the only apparent injury was the small abrasion to the left shoulder which was non-bleeding. ECF No. 35-3 at 22. He again denied pain. His vital signs were stable. Id.

Plaintiff filed his Standard Form 95 Administrative Tort Claim on April 20, 2017. He received his denial letter on April 19, 2019, and filed this FTCA action on May 13, 2019, well within the six-month limitation time from the date of his Administrative Tort Claim denial.

**B. Applicable Law**

The FTCA is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of the negligent acts of agents of the United States. The United States cannot be sued in a tort action unless it is clear that Congress has waived the Government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United

<u>States</u>, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United

States Code. 28 U.S.C. §§ 1346(b), 1402(b), 2401(b) and 2671-2680. An inmate "can sue under the

FTCA to recover damages from the United States Government for personal injuries sustained during

confinement in a federal prison, by reason of the negligence of a government employee." <u>United

States v. Muniz</u>, 374 U.S. 150 (1963).  The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort
> claims, in the same manner and to the same extent as a private individual under like
> circumstances, but shall not be liable for interest prior to judgment or for punitive
> damages.

However, the FTCA does not create a new cause of action. <u>Medina v. United States</u>, 259 F.3d 220,

223 (4th Cir. 2001). "The statute merely permits the United States to be held liable in tort in the same

respect as a private person would be liable under the law of the place where the act occurred." <u>Id.</u>

The FTCA requires a plaintiff to file an administrative claim prior to commencing a suit

against the United States. 28   U.S.C. § 2675. First, a plaintiff must timely file his claim with the

appropriate federal agency, which then has the power to settle or deny it. § 2401(b). The plaintiff may

file a civil action against the United States only if the agency has denied the   claim. § 2675(a).

Alternatively, "[t]he failure of an agency to make final disposition of a claim within six months after

it is filed shall . . . be deemed a final denial of the claim" for the purposes of fulfilling the requirement.

<u>Id.</u>

The FTCA's administrative exhaustion requirement is fulfilled when  the  agency  "receives

from  a  claimant  .  .  .  an  executed Standard Form 95 or other written <u>notification of an incident</u>,

accompanied by a claim for money damages in a sum certain." 28 C.F.R. § 14.2 (emphasis added).

The purpose of this notice is to enable the agency to investigate and place a sum certain value on the

claim. <u>Ahmed v. United States</u>, 30 F.3d 514, 516-17 (4th Cir. 1994); <u>cf.</u> <u>Henderson v. United States</u>,

785 F.2d 121, 124 (4th Cir. 1986) (quoting <u>Meeker v. United States</u>, 435 F.2d 1219, 1222 (8th Cir.

1970) (explaining that Congress intended to "improve and expedite disposition of monetary claims against the Government by establishing a system for prelitigation settlement, to enable consideration of claims by the agency having the best information concerning the incident, and to ease court congestion and avoid unnecessary litigation"). Consequently, a plaintiff cannot present an administrative claim based on one theory of relief and then maintain an FTCA suit based a different cause of action or set of facts. Deloria v. Veterans Admin., 927 F.2d 1009, 1012 (7th Cir. 1991) (finding administrative notice of conspiracy to alter medical records was not sufficient notice of subsequent FTCA claims of medical malpractice and negligence because the "allegations involve wholly different incidents").[4]

## 1) Wrongful Application of Restraints

Plaintiff's Standard Form 95 contends that on June 16, 2016, BOP staff violated BOP Policy 5566.16 when after calling him "nigger," without justification, they inappropriately used force by applying restraints to him and leaving them on for four days, in violation of his Eighth Amendment rights. ECF No. 18-1 at 1. The BOP's denial letter to that Administrative Tort stated that investigation into his claim "failed to reveal that you suffered a compensable personal injury due to the negligence of a government employee acting within the scope of employment." Id. at 3.

However, Plaintiff's Amended Complaint alleges that on June 16, 2016, in an unprovoked attack, BOP staff called him "nigger" and then without justification, wrongfully applied restraints to him for 4 days, in violation of his Due Process rights.  ECF No. 18 at 6. The Amended Complaint makes no mention of any violation of BOP policy or Eighth Amendment rights. Moreover, in response

---

[4] Compare Doe v. United States, 618 F. Supp. 71, 74 (D.S.C. 1985) (explaining that it "would be an act of legal socery [sic]" to "convert" an intentional assault and battery administrative claim to an FTCA claim of medical malpractice because "the facts simply do not support any claim other than one for assault and battery"), with Munger v. United States, 116 F. Supp.2d 672, 676-77 (D. Md. 2000) (allowing two plaintiffs to file separate FTCA claims even though the plaintiffs did not file separate administrative claims because the claims "arose out of the same facts").

to the Defendant's argument that there was no support in the record for a claim of negligence and that the use of force and restraints were appropriate because of Plaintiff's disruptive behavior, for the first time, Plaintiff alleges that the BOP staff committed an "intentional tort" [ECF No. 39 at 5 – 6] when it applied full restraints to him in violation of BOP Policy 5566.16. Id. at 4. Further, he asserts, without explanation, that he has proven the "three elements" of negligence. Id. at 6.

A review of the record clearly reveals that neither Plaintiff's Standard Form 95 Claim Form nor the Amended Complaint make any claim of negligence.  While not explicitly stated in his Standard Form 95 Claim Form, liberally construed, it is clear that Plaintiff is alleging an intentional act occurred on June 16, 2016, when BOP staff used excessive force, in violation of his Eighth Amendment rights to be free from cruel and unusual punishment, by unjustifiably applying use of force and full restraints when he had committed no violation or infraction.

As noted *supra*, a plaintiff cannot present an administrative claim based on one theory of relief and then maintain an FTCA suit based a different cause of action or set of facts. Deloria v. Veterans Admin., 927 F.2d at 1012. Not only was Plaintiff's Eighth Amendment violation claim of excessive force not the same claim raised in his Amended Complaint, an Eighth Amendment claim of excessive force is a constitutional claim that is not cognizable in a FTCA action.

A constitutional civil rights claim is not cognizable in an FTCA lawsuit. FDIC v. Myer, 510 U.S. 471, 477-79 (noting that a constitutional tort claim is not cognizable in an FTCA lawsuit because the United States has not waived its sovereign immunity with respect to constitutional tort allegations); Blanchard v. United States, No. 2:14cv58, 2015 WL 4107311, at 13 (N.D. W.Va. July 7, 2015), *aff'd* 622 F. App'x 287 (4th Cir. 2015) (*per curiam*) (unpublished) (finding that a civil rights claim alleging a violation of the Eighth Amendment prohibition against cruel and unusual punishment

is not actionable against the United States in an FTCA lawsuit because a constitutional tort claim is not cognizable under the FTCA.

Nonetheless, here, Plaintiff elected to file an FTCA against the United States, instead of a Bivens civil rights constitutional lawsuit against individual BOP employees. Therefore, because the Plaintiff alleges that BOP staff violated his constitutional right to be free from cruel and unusual punishment, he fails to state a valid claim for relief under the FTCA. Even if Plaintiff's claim were cognizable here, because it was not the same claim that Plaintiff administratively exhausted, it must be dismissed without prejudice for lack of jurisdiction.

## 2) Plaintiff's Claim of False Statements by BOP Staff

Plaintiff also alleges that BOP staff member J. Phipps "gave false statements [about Plaintiff] in protecting staff" to justify the application of the restraints; he does not specify what the "false statements" were.  The undersigned notes that Plaintiff raised this claim in both his Standard Form 95 Administrative Tort Form and Amended Complaint.

The intentional tort exception to FTCA liability is codified in subsection (h) of the statute:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For purposes of this subsection, 'investigative or law enforcement officers' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680.

Under the FTCA's intentional tort exception, the United States is not liable for the intentional torts of its employees unless those acts are committed by law enforcement officers of the United

16

States. Correctional officers are considered "law enforcement officers" pursuant to 28 U.S.C. § 2680(h).  See Ortiz v. Pearson, 88 F.Supp.2d 151, 164 (S.D.N.Y. 2000). Accordingly, the FTCA waives sovereign immunity respecting alleged intentional torts committed by correctional officers; however, if "the actions underlying intentional tort allegations described in § 2680(h), [are] authorized and implemented consistent with federal law and the Constitution of the United States, [such actions] may be considered discretionary functions under § 2680(a), even if they would otherwise constitute actionable torts under state law." Medina v. United States, 259 F.3d at 225, *citing* Jackson v. United States, 77 F.Supp.2d 709, 714 (D. Md. Dec. 22, 1999) ("The Court holds that a FTCA plaintiff must first overcome the discretionary function 'hurdle' before the Court will consider intentional tort claims under § 2680(h)."). Moreover, "[i]f a defendant can show that the tortious conduct involves a 'discretionary function,' a plaintiff cannot maintain an FTCA claim, even if the discretionary act constitutes an intentional tort under § 2680(h)." Gasho v. United States, 39 F.3d 1420, 1435 (9th Cir. 1994).

Thus, a District Court considering whether the intentional tort exception bars an FTCA claim must determine if the Government's employees, in this case, the USP Hazelton officers whom Plaintiff claims injured him by telling lies about him to justify putting him in restraints, were performing a discretionary function at the time the alleged wrongful acts occurred. If the Court determines that to be the case, the Government and its employees are immune from liability pursuant to the holdings in Medina, Jackson, and Gasho.

Here, the undersigned finds that the record does not support the Plaintiff's version of the events. Beyond unsupported conclusory allegations to the contrary in Plaintiff's admittedly verified Amended Complaint, Plaintiff has failed to present any evidence to overcome the Defendant's evidence, including the contemporaneously-created Incident Report (drafted long before litigation

was at issue); the sworn affidavit of Stephanie Morris describing the incident regarding Plaintiff's

continued resistance and threats after BOP SHU staff attempted to gain control over him [ECF No.

35-2]; and the limited DVD video evidence produced,[5] which indicates that the use of force and

restraint techniques applied on June 16, 2016 were applied in a good-faith effort to maintain or restore

discipline, and not maliciously and sadistically to cause harm.  Plaintiff's conclusory allegations do

not meet the "heightened pleading standard" required in actions against government officials. See

Randall v. United States, 95 F.3d 339 (4th Cir. 1996); see also Dunbar Corp. v. Lindsey, 905 F.2d at

764.   Further, "[w]hen opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that

version of the facts for purposes of ruling on a motion for summary judgment. See Scott v. Harris,

550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686, 694 (2007).

---

[5] A review of the video footage DVD, which begins at approximately 11:15 a.m. on June 16, 2016, when the original incident involving Plaintiff's initial resistance and disruptiveness, which apparently occurred at around 9:00 a.m., had already past, begins as the Calculated Use of Force Team is assembling, and each individual steps up to the camera to introduce themselves.

An explanation of the reason for the Use of Force was provided, advising that McKreith was being placed in restraints because he had been disruptive and shown signs of imminent violence.

The speaker notes that at approximately 9:00 a.m., Plaintiff was placed in restraints and escorted off the range to a holding cell, in order to conduct a routine cell search.  After the cell search revealed that Plaintiff was in possession of unspecified destroyed government property, staff advised Plaintiff that he would be placed in paper clothing, and that an incident report would be written, charging him with destruction of government property. According to the speaker, McKreith immediately refused all staff orders to submit to a visual search and all staff orders to submit to restraints.  He then escalated the situation by saying "go get the team, I will stay in restraints the rest of my time."

The speaker began to detail Plaintiff's past disciplinary history, noting that he had "high security level status," when at approximately 1.51 minutes into the video, the audio went out.  Nevertheless, a view of the Use of Force team's actions are clearly visible.  At 5.25 minutes into the video, the team, in full protective gear, is gathered in the hallway; they walk a brief distance to the holding cell where Plaintiff is standing at the back wall facing them, wearing only a pair of orange shorts. Consistent with the Incident Report, "[c]onfrontational avoidance proved effective once the team was positioned on the door." The team spoke to Plaintiff and he immediately came forward, turned around, put his hands out behind his back, and submitted to being cuffed.  The team then entered the cell, walked him to the back and put him against the wall; Plaintiff stood there with his face to the wall. One staff member stooped down and applied ankle restraints with a chain. Around 9.37 minutes in, Plaintiff is uncuffed; his right arm is visible, raised against the wall; a white (presumably paper) gown is applied; he was then turned toward the camera, re-cuffed, and a chain is applied to his waist.  Near the end, at around 14.10 minutes in, it appears that a staff person in a blue scrub top, presumably from medical, came in and conducted a brief medical exam.

Throughout what little can be seen of Plaintiff in the video (most of the time, his back is to the camera and one or more team members are between him and the camera), he appeared to speak very little, did not appear to resist, and appeared stoic, if anything.  There is no evidence to suggest that the team was abusive.

Accordingly, the undersigned finds that the decision to use force against Plaintiff on June 16, 2016 was an appropriate discretionary function, based on Plaintiff's continued disruptive behavior in resisting and refusing to obey direct orders. This created a potentially volatile situation, interfering with the BOP's duty of care under 18 U.S.C. § 4042, to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." The statute sets forth no particular conduct that BOP personnel should engage in or avoid, while attempting to fulfil their duty to protect inmates.  See Calderon, *supra* at 2002 WL 32332081, *5. Plaintiff's response to the Government's dispositive motion completely fails to establish that the Government's application of force, which he does not allege caused any physical injury to him, was anything but discretionary. Instead, after admitting he did not obey an order to cuff up [ECF No. 39 at 2], he focuses on his minimizing his own responsibility for involvement in the incident and blames the BOP staff for the consequences to him for the same. Because Plaintiff has not overcome the discretionary function hurdle, it is unnecessary to consider whether the intentional tort exception applies.

However, even if the undersigned were to perform an intentional tort exception analysis, Plaintiff's claim would still lack merit. The BOP employees identified by Plaintiff as the Government agents who told "false statements" about him in order to wrongfully restrain him are correctional officers, and as such, they are subject to both the same liability and immunity which applies to law enforcement officers. Because the alleged intentional torts of those agents were implemented consistent with federal law and the Constitution, those actions may properly be considered discretionary functions. Accordingly, the undersigned finds that even if the actions of BOP correctional officers could have been considered intentional torts, which they clearly were not, because those actions were lawfully performed consistent with federal law, the actions were discretionary functions, and the Government is thus immune from suit under the FTCA.

Moreover, there is absolutely no evidence, however, other than the Plaintiff's own unsupported, conclusory allegations which are woefully lacking in credibility and contradicted by the available record, to show that the BOP staff had the necessary intent to tell lies about him in order to force him into restraints.  Instead, the evidence shows that the use of force involved properly applied compliance techniques to gain quick control of a disruptive, hostile, and noncompliant inmate,[6] the use of which was reasonable under the circumstances.

Accordingly, there appears to be no genuine issue of material fact regarding this claims, and the undersigned recommends it be dismissed.

**3) Negligence**

Plaintiff's threadbare allegation, in his response in opposition, that he has proven "the three elements" of negligence by reciting what the required elements of a negligence claim should be, with nothing more, fails to state a claim of negligence.

Moreover, even if Plaintiff's assertion that he stated a claim of negligence were accurate, when deciding a Rule 12(b)(6) motion to dismiss, the district court is limited to the allegations set forth in the complaint. See Kennedy v. Chase Manhattan Bank, 369 F.3d 833, 839 (5th Cir. 2004); cf. Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) (explaining that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss"); see also Agnew v. NCAA, 683 F.3d 328, 348 (7th Cir. 2012) (It is improper to amend a complaint via a response to a motion to dismiss); see also Brown v. United States DOJ, 1:17cv144, 2019 U.S. Dist. LEXIS 44806, *24 - 25 (N.D. W.Va. Jan. 23, 2019), adopted by Brown v. United States DOJ, 2019

---

[6] The undersigned notes that while Plaintiff's pleadings insist that he had never been charged with a rules violation prior to the June 16, 2016 incident, it is apparent from the obviously incomplete (2-page) excerpt from his Inmate Discipline Data Chronological Disciplinary Record that Plaintiff produced, that he did have prior incidents for which he was sanctioned for rules violations: June 11, 2016, refusing to obey an order [ECF No. 18-2 at 1];  November 16, 2010, possessing a hazardous tool [ECF No. 18-2 at 2]; October 21, 2011, fighting with another inmate [id.]; tattooing or self-mutilation [id.]; as well as subsequent sanctions issued in 2017 - 2018 for various other violations (refusing orders; threatening bodily harm; and possessing a dangerous weapon). Id. at 1.

U.S. Dist. LEXIS 43936, Keeley, I.M. (N.D. W.Va. Mar. 18, 2019).  Here, neither Plaintiff's Standard Form 95 nor his Amended Complaint make any mention of a claim of negligence.

Further, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . " Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Here, Plaintiff's complaint has not asserted any factual allegation in this claim that meet the "heightened pleading standard" required in actions against government officials, or that would give rise to relief above a speculative level. Therefore, Plaintiff's claim must fail.

### VI. <u>Recommendation</u>

In consideration of the foregoing, it is the undersigned's **RECOMMENDATION** that the Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [ECF No. 34] be **GRANTED;** Plaintiff's Ground One claim should be **DISMISSED without prejudice** for lack of jurisdiction;  summary judgment should be granted to the Defendant on Plaintiff's Ground Two claim and it should be **DISMISSED with prejudice**; Plaintiff's Ground Three claim should be **DISMISSED with prejudice** for failure to state a claim upon which relief can be granted, and Plaintiff's Amended Complaint should be **DISMISSED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the Recommendation to which the objections are made. Objections shall identify each portion of the magistrate judge's recommended disposition that is being challenged and shall specify the basis for each objection.  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12. A copy of such objections should also be submitted to the United States District Judge.

21

**Failure to timely file objections as set forth above will result in waiver of the right to *de novo* review by this Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to transmit a copy electronically to all counsel of record.

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

DATED: July 23, 2020

/s/ *Michael John Aloi*

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE